■ MARK SCHMIDT, Respondent, v ONE NEW YORK PLAZA CO. LLC et al., Appellants. [60 NYS3d 37]—

Order, Supreme Court, New York County (Debra A. James, J.), entered January 25, 2017, which, in this personal injury action, denied defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs and the motion granted. The Clerk is directed to enter judgment accordingly.

We find that the motion court erred in denying defendants' motion for summary judgment.

Plaintiff testified that he was employed by nonparty Michael Stapleton Associates, an agency that provides security services to defendants. On the day of his accident, plaintiff was assigned to New York Plaza with his bomb-sniffing dog and was responsible for inspecting trucks as they sought entry to the loading dock at the premises. Plaintiff testified that immediately prior to his accident, he was walking down the service ramp with his dog. As he descended the ramp, a delivery person was ascending the ramp with a pallet. Plaintiff recalled that he was on the outer side of the service ramp with his dog trailing behind him. According to plaintiff, as the person with the pallet passed him, he turned to make sure that his dog did not attempt to inspect the pallet. As he turned back to continue

down the ramp, he took a step with his left foot that came down at the outer edge of the ramp, with the rear of his foot overhanging the edge of the ramp. Plaintiff stated that with his weight on his left foot, his ankle rotated inward, causing him to lose his balance and fall backward off the ramp.

Defendants moved for summary judgment dismissing the complaint, arguing that plaintiff could not establish that his accident took place as the result of any negligence on the part of defendants in the design or maintenance of the service ramp. In support of their motion, defendants submitted an architect's report from their expert which concluded that the design and construction of the ramp did not violate the New York City Building Code or any industry-wide standard.

In opposition, plaintiff averred that its expert would testify that the service ramp was defective and that the defects were in violation of "good, proper, and accepted building and engineering standards" for ramps in equivalent buildings and were in violation of the New York City Building Code and industry standards at the time of construction.

The motion court denied defendants' motion for summary judgment and found that they failed to establish a prima facie entitlement in that defendants' expert affidavit only addressed the Building Code and Occupational Safety and Health Administration (OSHA) regulations, and failed to address other types of industry-wide standards that might be applicable to determine whether defendants were negligent.

On a motion for summary judgment, the moving party has the initial burden of establishing its entitlement to judgment as a matter of law with evidence sufficient to eliminate any material issue of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The facts must be viewed "in the light most favorable to the non-moving party" (*Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]). Summary judgment should not be granted where there is any doubt as to the existence of triable issues or there are any issues of fact (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Here, defendants established prima facie entitlement to summary judgment by establishing that the ramp was not designed in a negligent manner and was not in violation of any rules, or standards applicable at the time of construction.

Defendants' expert report stated that the Building Code applicable to the premises, which was enacted in 1968 (*see* 1968 Building Code of City of NY [Administrative Code of City of NY] tit 27), was silent concerning the components of a loading

dock, delivery truck parking, material loading and unloading, and in regard to an access ramp between the truck parking floor and the top of the loading dock. As a result, the expert concluded, the ramp did not violate the Building Code. The expert also concluded that because the service ramp was not part of the required egress from the loading dock area, those parts of the Building Code applicable to "Means of Egress" did not apply.

Based on his conclusion that the Building Code did not contain sections specifically applicable to the instant facts, defendants' expert reviewed the standards promulgated by OSHA. He concluded, however, that no section of OSHA applied to the instant facts. He also found that National Fire Protection Agency "Life Safety Code" did not apply to the instant facts. Defendants' expert opined that the portion of the curb of the ramp where plaintiff was alleged to have tripped was not a foreseeable pedestrian path, since it runs parallel, not across the path of pedestrians walking up and down the ramp. He noted that the use of bright yellow paint to alert pedestrians to the presence of walkway conditions was proper and in compliance with the American Society for Testing and Materials. Overall, defendants' expert concluded that plaintiff had not cited to any valid authority in support of his contention that the ramp caused the accident, and established that the ramp did not violate any standards referenced by plaintiff's expert in his expert exchange.

In opposition, plaintiff failed to raise a triable issue of fact as to any negligence on the part of defendants (*see Hotaling v City of New York*, 55 AD3d 396, 398 [1st Dept 2008], *affd* 12 NY3d 862 [2009]).

The facts here are similar to those in *Hotaling v City of New York*. In *Hotaling*, the plaintiff was severely injured when he was hit in the head with a swinging door while in the process of exiting a school during a fire drill. The jury found that the swinging double doors were negligently designed. We reversed, holding that the design of the building did not violate building safety standards applicable at the time it was built. The plaintiffs, arguing that the "human factors" design standards were applicable, provided expert testimony that the design of the double doors was unsafe, and that the rate of speed at which the doors opened was excessive. The plaintiffs' expert did not state that the design of the doors violated the New York City Building Code in effect when the school was constructed in 1970. However, we were persuaded by defendants' expert who testified that the building design, including

the doors leading from the hallway to the stairwell, fully complied with the Building Code as it existed in 1970 when the building was built. He disputed the findings of plaintiffs' expert that the design of the double door violated any other industry standards. The Court held that the plaintiffs failed as a matter of law to make out a prima facie case of negligent design.

Here, plaintiff failed to raise a triable issue of fact as to any violation of any industry-wide standard at the time of construction. He failed to point to any industry-wide standards that may be applicable. Plaintiff's expert failed to "offer concrete proof of the existence of the relied-upon standard as of the relevant time, such as a published industry or professional standard or . . . evidence that such a practice had been generally accepted in the relevant industry at the relevant time" (*Hotaling* at 398, citing *Jones v City of New York*, 32 AD3d 706, 707 [1st Dept 2006] [internal quotation marks omitted]). Concur—Acosta, P.J., Richter, Webber and Kahn, JJ.